UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN RE:                                    )
                                          )
PANAGIOTIS IATROU, PETER SAID             )
RAHHAOUI, SAIF MUHSEN, EARLEY             )
BARBOSA, RAHIMA BOUGHALEM, MARCIO         )
A. COSTA, CARLOS DEALVARENGA,             )
MANAL HAMADI, GEORGE BERUBE,              )    CIVIL ACTION NO.
HUBERT LUBIN, RACHID MOUKHTARI,           )    20-40112-DPW
JOSEPH NASR, MERILIO ROJAS,               )
HAZEM WEHBE, THERESA ST. PETER,           )
RUBEN NIEVES, ABDELTIF BELLAGAT,          )
ABDELKHALAK TOQI,                         )
                                          )
          Appellant-Participants,         )
                                          )
v.                                        )
                                          )
STEPHEN DARR, TRUSTEE,                    )
                                          )
          Appellee,                       )
                                          )
TELEXFREE, LLC,                           )
                                          )
          Debtor,                         )
v.                                        )
                                          )
RICHARD KING,                             )
                                          )
          Trustee.                        )


MEMORANDUM AND ORDER
January 25, 2022

This matter arises from the bankruptcy of TelexFree, LLC, a company that operated a Ponzi and pyramid scheme estimated to have involved more than a million participants and to have extracted approximately $1.8 billion in payments from them.  The participants have filed claims as creditors to recover funds

they lost to the TelexFree scheme from the company's bankruptcy estate.  The Liquidating Trustee, Stephen Darr, objected to proofs of claim filed by the eighteen Appellant-Participants before me.  The Trustee asserted these claims were not adequately documented and were, in fact, contradicted by TelexFree's aggregated account data.  The bankruptcy court sustained the Trustee's objections and disallowed the Appellant-Participants' claims.

The Federal Rules of Bankruptcy Procedure instruct claimants to support certain claims — including claims based on a writing — with specific documentation.  FED. R. BANKR. P. 3001(c).  Claims arising from oral arrangements and cash transactions, however, are not expressly covered by those rules. Reasoning that nevertheless some documentation must be required to set out a *prima facie* basis for a claim, the bankruptcy court disallowed the Appellant-Participants' claims for lack of conventional supporting documentation.  The bankruptcy court did so without an evidentiary hearing.

The Appellant-Participants request in their appeal that the matter be remanded to the bankruptcy court for an evidentiary hearing.  I conclude that an evidentiary hearing is required to resolve the core factual disputes relating to the Appellant-Participants' outstanding claims.  Consequently, I will reverse the bankruptcy court's order and remand this matter to the

bankruptcy court for further proceedings.

## I. BACKGROUND

### A.   *The TelexFree Scheme and Chapter 11 Bankruptcy*

TelexFree, LLC was a company purportedly engaged in the sale of Voice over Internet Protocol (VoIP) services.  In reality, it operated a pyramid scheme built upon the recruitment of new participants.  Participants purchased membership plans that allowed them to earn credits by placing internet advertisements, selling VoIP services, or recruiting new participants.  The credits could be redeemed for cash, transferred to another participant, or used against the participant's outstanding balance on their membership plan.  TelexFree's operations also bore the hallmarks of a Ponzi scheme: participants were promised returns on their investments without selling VoIP services or recruiting new participants, and anticipated benefits from more recent participants' investments.  *See In re TelexFree, LLC*, 941 F.3d 576, 579 (1st Cir. 2019).

1.   TelexFree Membership Payments and User Accounts

New participants purchased membership plans with TelexFree through either direct or triangular transactions.  In a direct transaction, the participant purchased a membership plan from TelexFree and submitted payment directly to the company.  Participants who engaged in direct transactions would ostensibly

have records of their payment to TelexFree.  Less than fifteen percent of TelexFree participants paid their membership fees directly to TelexFree, however.  *In re TelexFree, LLC*, 941 F.3d at 580.

The vast majority bought into TelexFree through triangular transactions.  These participants paid their membership fee to a recruiting participant, often in cash.  The recruiting participant used TelexFree credits to satisfy a new participant's membership invoice.  The new participant was then assigned a user account in the TelexFree database.  *Id.*  A participant created a user account each time he or she purchased a new membership plan or VoIP plan.  *In re TelexFree, LLC*, No. 14-40987-MSH, 2021 WL 2562646, at *2 (Bankr. D. Mass. June 22, 2021).

Four details of this scheme are of particular relevance to the appeal now before me.  <u>First</u>, most new participants paid for their TelexFree memberships in triangular transactions, making cash payments to the participants who recruited them.  *In re TelexFree, LLC*, 941 F.3d at 584.  <u>Second</u>, participants do not appear to have received receipts or clear documentation of their payments in triangular transactions.  <u>Third</u>, participants often possessed multiple user accounts in the TelexFree database, sometimes under a variety of usernames.  *Id.* at 579 ("Many participants had multiple accounts, as they were encouraged to

do by the economic incentives of the scheme."). Fourth, the TelexFree user account database did not link the user accounts belonging to a single participant; as a consequence, a participant's full history of TelexFree transactions could not easily be tracked across his or her user accounts through the TelexFree database. *In re TelexFree, LLC*, 2021 WL 2562646, at *2.

### 2. TelexFree Files for Chapter 11 Bankruptcy

The TelexFree scheme was modeled after that of TelexFree's Brazilian affiliate Ympactus Comercial Ltda. Ympactus enjoyed rapidly accelerating growth through early 2013 but its operations were suspended by the Brazilian government in June of 2013 based on allegations that the company was perpetrating a Ponzi scheme. TelexFree also expanded rapidly in 2013 and 2014, until March 2014, when it introduced a new business plan that prompted a run on the bank. Participants requested payouts of more than $150 million over the course of several weeks, effectively ending the TelexFree scheme. Together, TelexFree and Ympactus extracted as much as $1.8 billion from approximately a million participants over the course of two years.

TelexFree filed for Chapter 11 Bankruptcy on April 13, 2014. The bankruptcy court appointed Stephen Darr as the Chapter 11 Trustee; Mr. Darr would later become the Liquidating

Trustee.  The bankruptcy court determined that TelexFree conducted a Ponzi and a pyramid scheme designed to defraud participants.  Judge Hoffman of that court ordered participant claims be paid out according to a net equity formula — the total of the amount the participant paid to TelexFree less the amount participants received from TelexFree, including any amounts from triangular transactions.  Only "net losers" — those who lost more than they gained — would be entitled to a payout;[1] "net winners" would not receive a distribution.

Judge Hoffman of the bankruptcy court, who presided over the TelexFree Chapter 11 proceeding throughout the period relevant to this appeal before his retirement, issued proposed findings which were adopted by the district court, allowing the Trustee to pursue avoidance actions against net winners.  The First Circuit affirmed that approach, holding the Trustee had standing to seek funds from net winners because the contested funds from the TelexFree scheme were "interests of the debtor in property."  *In re TelexFree, LLC*, 941 F.3d at 578.  Meanwhile, the Trustee entered into a settlement agreement with the Internal Revenue Service, under which TelexFree would liquidate and pay out allowed claims filed by participants who suffered

---

[1] Participants who lost a net amount of $4,250 or less were authorized to receive 43% of their claims in a single distribution.  Those who lost a net amount greater than $4,250 were authorized to receive 39% of their claims.

net losses in the TelexFree Scheme.

### 3.   Identifying Net Losers

Upon a motion from the Trustee, the bankruptcy court ordered participants with claims against the TelexFree bankruptcy estate to file electronic proofs of claim through an online portal.  The Portal's proof of claim filing took the place of the standard Official Form 10 and was the exclusive means by which participants could file a proof of claim.  *In re TelexFree, LLC*, No. 14-40987-MSH (ECF No. 688) (Bankr. D. Mass. Jan. 26, 2016).  Participants were instructed to "complete all data requests on the participant [electronic proof of claim portal], and [warned that] failure to do so may result in disallowance of the claims."  *Id*.  Participants input personal information associated with their TelexFree user account to the Portal.  The Portal then allowed participants to view their transaction history with TelexFree across multiple user accounts.[2]  Though not entirely clear from the record before me, it appears that Appellant-Participants in this case invested in TelexFree primarily through triangular transactions, many by way of cash payments to TelexFree recruiters.[3]  Many appear to lack

---

[2] The net equity formula required that each participant's losses and gains be aggregated from their transactions across all their user accounts, to calculate that participant's net losses or gains.  *In re TelexFree, LLC*, No. 14-40987-MSH, 2021 WL 2562646, at *6 (Bankr. D. Mass. June 22, 2021)

[3] Six Appellant-Participants specified in affidavits that they made cash payments to recruiting TelexFree participants.  The

documentation of their transactions and user account information beyond what was provided through the Portal.

The Portal provided participants' user account data aggregated from the records in the TelexFree database.  The TelexFree database included over seventeen million user account records.  *In re TelexFree, LLC*, 2021 WL 2562646, at *17 n.30. Each account included the self-reported personal information of its participant owner (e.g., name, email, phone number, address, username, and passwords).  Many participants held multiple user accounts, each reflecting different transactions.  Some, like Appellant-Participant Panagiotis Iatrou, recalled having as many as thirty different user accounts.  User accounts varied in the amount and quality of personal information supplied.  The TelexFree database did not register when multiple user accounts belonged to a single participant.  *Id.* at *2.

The Trustee hired accountant Timothy Martin, a managing director at the Huron Consulting Group, LLC, to develop a method of aggregating the user account data for each participant.  Mr. Martin, who has no background in computer or data science, worked with an unidentified "computer specialist" and an unidentified "e-discovery specialist" to develop an algorithm to identify the user accounts associated with a given participant.

---

remaining twelve participants do not specify in their proofs of claim whether some or all their payments to TelexFree were cash transactions.

*Id.* at *4.  The algorithm utilized the self-reported personal information associated with each user account to link user accounts to participants:

> Mr. Martin ultimately developed and used a 13-step procedure.  Each step (or iteration) used data from the name field combined with data from one or more of the six other selected fields, with such data having first been cleaned and standardized to some [unknown] degree. Some steps used only portions or certain combinations of data from the specified fields.  Each step identified exact data matches among all user account records (a deterministic method – specifically, a multistep or iterative deterministic method).  After the first step of initial matches, each subsequent step's resulting matches were compared and matched to prior steps' results, forming an ever-increasing aggregation of user accounts assigned to individual participants.  If the data fields used in any step were changed or any steps reordered, the aggregation results could be different.

*Id.* at *17.

In the related matter in which the Trustee sought to recover funds from alleged net-winners, the defendant net winners challenged the reliability of Mr. Martin's aggregation method.  *In re TelexFree, LLC*, No. 14-40987-MSH, 2021 WL 2562646, at *3.  Judge Hoffman held a two-day evidentiary hearing in 2021 to determine whether Mr. Martin's methodology met the reliability requirements of FED. R. EVID. 702.  Though conducted in the context of the parallel claims against net winners, I will consider Judge Hoffman's thorough analysis of Mr. Martin's qualifications and methods here.  I note that neither the Appellant-Participants nor the Appellee Trustee, who filed briefs before me, have bothered to call Judge Hoffman's

more recent net winner expertise analysis to my attention.[4]

        *a.   Qualifications and Experience*

Judge Hoffman noted that Mr. Martin had no relevant training or experience in data-science and lacked relevant experience aggregating and analyzing large datasets.  *Id.* at *5.  Mr. Martin conceded that he never dealt with the issue of "multiple user accounts and the need to link those accounts" in his experience as an accountant.  *Id.*

        *b.   Selection of Name Field Data as Constant Variable*

Mr. Martin's algorithm linked user accounts based,

---

[4] Judge Hoffman reported that he observed a "fundamental difference" between the Trustee's use of Mr. Martin's aggregation method in the Chapter 11 claims process and its use in adversary proceedings against net winners.  Participants, he said, claiming a net loss — such as the Appellant-Participants now before me — would have the opportunity to "make adjustments and provide additional data" to correct erroneous aggregation results, while participants calculated to be net winners in the aggregation were "forced to put on a legal defense challenging their liability."  *In re TelexFree, LLC*, 2021 WL 2562646, at *16.

I agree with Judge Hoffman that in the context of an avoidance action against those deemed net winners by Mr. Martin's algorithm, Mr. Martin's aggregation process "would not merely be starting a conversation but also could be ending it."  *Id.*  As further discussed in Part II.B, *infra*, however, Mr. Martin's potentially unreliable aggregation process may have been equally determinative of the Appellant-Participants' claims at issue before me in this matter.  Though in this matter participants could submit adjustments or additional accounts through the Portal to correct errors in the aggregated data, Mr. Martin appears to have rejected their attempts to correct their user account data unless they provided formal documentation of unaccounted-for transactions, documentation which may or may not have ever existed.

primarily, on the similarity of the accounts' name field data. "If, for instance, an individual participant created user accounts under names too dissimilar to match under Mr. Martin's aggregation process (James Smith and Superman), those accounts would not be combined in determining whether the individual was a net winner, and thus a class defendant in one of these adversary proceedings, or a net loser, eligible to file a claim." *Id.* at *7. "[B]ecause it was included in every step, the name field data performed a limiting function in Mr. Martin's aggregation process." *Id.*

Mr. Martin provided no reasoned explanation for his decision to rely so heavily on name field data. He assumed that the user accounts belonging to the same participants would all be listed under the same, or at least a very similar, names. *Id.* at *7-*8. Hundreds of thousands of accounts, however, were found to include false and misspelled names, blank names, or names of three characters or fewer. *Id.* at *9-*10. Mr. Martin made no attempt to determine how many accounts were listed under false or misspelled names and he excluded over 200,000 accounts with names fewer than three characters long. *Id.* Mr. Martin could not account for how these decisions may have impacted the aggregation process. *Id.*

  c. *Data Quality Issues*

Judge Hoffman found Mr. Martin "certainly was aware of

multiple issues indicating that the TelexFree data was of poor quality." *Id.* at *15.  Mr. Martin failed to explain how "acknowledged data quality issues were considered, analyzed, and addressed" in his aggregation process.  *Id.* at *8.  Mr. Martin neither documented of his efforts to standardize and improve the underlying TelexFree dataset, nor did he document "what data was excluded, and the extent to which such exclusions might have affected any analysis or results."  *Id.* at *15.

> d.   *Mr. Martin's Application of Methodology*

Mr. Martin provided no meaningful rate of error for his aggregation method.[5]  He explained that his "process had been developed through trial and error and that no specific number of steps had been mandated by the chosen method. . . . he continued creating additional steps until in his judgment the law of diminishing returns indicated that he should stop." *Id.* at *18.

Judge Hoffman found Mr. Martin's method and opinion insufficiently reliable to satisfy the requirements of expert opinion stated in FED. R. EVID. 702.  *Id.* at *19.  As noted, *supra*

---

[5] Mr. Martin reported that his aggregation method was proven accurate when "more than 95%" of claimants who entered information into the Portal "accepted the User Accounts identified by the Aggregation Algorithm."  *In re TelexFree, LLC*, 2021 WL 2562646, at *19.  I observe, however, that Mr. Martin's statistic suggests only that the aggregation algorithm was not *overinclusive;* the record does not detail frequency with which the algorithm proved *underinclusive*.

note 4, the Trustee used this same method of user account
aggregation to calculate the net equity of the Appellant-
Participants in this case.

### 4.   Trustee's Objections and Appellant-Participants' Efforts to Prove their Claims

The bankruptcy court approved the use of omnibus procedures
to address disputed participant claims in December 2017.
Pursuant to those procedures, the Trustee could file omnibus
objections to groups of participants whose claims were deemed
insufficient.

As relevant to the Appellant-Participants before me in this
appeal, the Trustee filed Second and Third Omnibus Objections to
disputed participant claims on August 29, 2019.  Participants
responded in October 2019 by providing documents to support
their claims.  In many cases the supporting documentation was
limited to a "TelexFree Participant Questionnaire."  Some
participants provided explanations for the lack of
documentation, for example, that they paid cash and were not
provided with a receipt or were locked out of the TelexFree
database.  Others provided third-party affidavits supporting
their proofs of claim, copies of an agreement with TelexFree, or
otherwise unexplained handwritten notes.  Still others stated in
their questionnaires that documentation may exist, but they did
not provide it.  A few participants were able to document their
claims with bank statements and checks.

The Trustee provided aggregated user account data from the TelexFree database to participants, who responded with affidavits in January 2020.  In response to the additional documentation submitted by participants, Mr. Martin filed an affidavit addressing the claims of twenty-one disputed participants.  Mr. Martin recommended allowing some claims based on documentation submitted or TelexFree records, but recommended the claims of the eighteen Appellant-Participants be disallowed. Many of these claims, Mr. Martin concluded, provided insufficient documentation to support their claims that they made payments to TelexFree.  Some Appellant-Participants provided documentation of their payments, Appellant-Participant Carlos Dealvarenga for example, but Mr. Martin identified additional accounts attributable to them with positive balances that outweighed any documented payments to TelexFree.  Mr. Martin concluded that the participants were "net winners" and ineligible to bring claims.

The Appellant-Participants responded by requesting more time to track down records.  The Appellant-Participants are located throughout the world, and many do not speak English fluently or have access to email.  In April 2020, Appellant-Participants provided additional supporting documentation for their claims.  These documents included boilerplate affidavits in which participants asserted that they were "net losers,"

filled in their claim amount, and detailed to varying degrees their transactions with TelexFree.  Again, many of the participants declared that they paid in cash and were not given a receipt or documentation from TelexFree.[6]

The Appellant-Participants challenged the recordkeeping methods used by TelexFree and requested a full trial on the merits to address material factual disputes surrounding proof of payment and recordkeeping by TelexFree.  Counsel for the Appellant-Participants identified one potential witness who would testify as to the inadequate nature of the TelexFree records.

After reviewing the additional supporting documents, Mr. Martin filed a second affidavit in support of the Trustee's Second and Third Omnibus Objections to dispute participant claims.  Attached to his affidavit were records of each participant's activities according to the TelexFree database, together with a statement of the specific reason for objection as to each participant.  The reasons included that transactions or accounts were modified by participants without sufficient documentation.

The Trustee filed the Sixth and Seventh Omnibus Objections

---

[6] Some affidavits indicated that attached exhibits provided documentation, including bank statements; these exhibits, however, do not appear to have been submitted in the record transmitted to me in connection with this appeal.

to more disputed participant claims on December 30, 2019.  Mr. Martin filed a third affidavit supporting the Sixth and Seventh Omnibus Objections in June 2020.

On August 10, 2020, the bankruptcy court sustained the Trustee's Sixth and Seventh Omnibus Objections and disallowed the claims of Abdeltif Bellagat [6th], Abdelkhalak Toqi [7th], Rachid Moukhtari [7th], Joseph Nasr [7th], Ruben Nieves [7th], Merilio Rojas [7th], Hazem Wehbe [7th], and Theresa St. Peter [7th].  The bankruptcy court also sustained the Trustee's Second and Third Omnibus Objections and disallowed claims by Peter Said Rahhaoui [2d], Marcio Costa [2d], Saif Muhsen [2d], Panagiotis Iatrou [2d], Manal Hamadi [2d], Hubert Lubin [2d], Carlos DeAlvarenga [2d], Rahima Boughalem [3d], Earley Barbosa [3d], and George Berube [3d].

The appeal of these eighteen participants before me seeks remand of this matter to the bankruptcy court for an evidentiary hearing in which they may challenge the accuracy of TelexFree's records.  The Trustee responds that an evidentiary hearing is not required because the participants failed to provide the required supporting documentation for their claims.

## II. DISCUSSION

In an appeal of a bankruptcy court decision, a district court will review legal conclusions *de novo*.  *TI Federal Credit Union* v. *Delbonis*, 72 F.3d 921, 928 (1st Cir. 1995); *see also In*

16

*re LP & D, Inc.*, 622 B.R. 473, 482 (D. Mass. 2020).  Findings of
fact are reviewed for clear error.  *TI Federal Credit Union*, 72
F.3d at 928.

**A.   *Documentation Required to Support Proof of Claim***

The Bankruptcy Code itself is silent on what, if any,
documentation is required to support a proof of claim.  *In re
Plourde*, 418 B.R. 495, 503 (B.A.P. 1st Cir. 2009).  The Federal
Rules of Bankruptcy Procedure, however, require a claimant to
submit specific documentation in support of certain types of
claims.  FED. R. BANKR. P. 3001(c).  That requirement is directed
to claims "based on a writing," individual debtor claims, claims
"based on an open-end or revolving consumer credit agreement,"
or claims involving a perfected security interest.  FED. R. BANKR.
P. 3001(c),(d); *In re Minbatiwalla*, 424 B.R. 104, 111–12 (Bankr.
S.D.N.Y. 2010) (noting that Rule 3001 requires supporting
documentation but citing only claims based on a writing or a
perfected security interest); *see, e.g.*, *In re Long*, 353 B.R. 1,
13–14 (Bankr. D. Mass. 2006) (proof of claim was not *prima facie*
valid when filer failed to attach promissory note, mortgage, and
loan agreement).

The documentation requirements outlined in Rule 3001(c) do
not apply to claims stemming from oral transactions and
unwritten obligations.  *See In re Pan*, 209 B.R. 152, 156 (D.
Mass. 1997)("Courts have consistently rejected the argument that

[Rule 3001(c)'s] documentation requirement extends to claims based upon statutory, rather than written, obligations."); *In re Johnson*, No. 11-BR-18629-GM, 2015 WL 128031, at *5 (Bankr. C.D. Cal. Jan. 7, 2015) ("Because Kaplan's claim is not based on a writing, no security interest is asserted, and it is not for consumer credit, the minimum requirement is that it be a written statement setting forth the claim and that it substantially conform to the official form.").  In cases involving claims based on unwritten transactions, clear documentation of the creditor's interest in the debtor's property may not exist and therefore could not be required to validate his or her claim. *See In re Archuleta*, No. 19-12905-J7, 2021 WL 1016881, at *6 (Bankr. D.N.M. Mar. 16, 2021); *see also In re Cluff*, 313 B.R. 323, 332 (Bankr. D. Utah 2004), *aff'd sub nom. Cluff* v. *eCast Settlement*, No. 2:04-CV-978 TS, 2006 WL 2820005 (D. Utah Sept. 29, 2006).

The Federal Rules of Bankruptcy Procedure do require that *all* proofs of claim "conform substantially to the appropriate Official Form."  FED. R. BANKR. P. 3001(a).  The official bankruptcy form for a proof of claim directs filers to "[a]ttach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and

security agreements."  Official Form 410 at 1.[7]  The form specifies that "[i]f the documents are not available, [claimants should] explain in an attachment."  *Id.*  Item 8 of the form instructs filers to attach documents required by FED. R. BANKR. P. 3001(c) supporting the basis of the claim, and Item 9 similarly requests documents showing evidence of a perfected security interest.  *Id.* at 2.

A proof of claim filed in accordance with the evidentiary rules above constitutes "*prima facie* evidence of the validity and amount of the claim."  FED. R. BANKR. P. 3001(f).  If the filer fails to include the required supporting documentation, the claim is not necessarily disallowed but instead loses its *prima facie* validity.  *In re Rehman*, 479 B.R. 238, 242 (Bankr. D. Mass. 2012).  If a claim retains its *prima facie* validity, an objecting party may still overcome the presumption if the objection is supported by "substantial evidence."  *Kittery Point Partners, LLC*, 623 B.R. 825, 836 (B.A.P. 1st Cir. 2021) (quoting *Juniper Dev. Grp.* v. *Kahn (In re Hemingway Transp., Inc.)*, 993 F.2d 915, 925 (1st Cir. 1993)).  The burden then shifts to the

---

[7] *Official Form 410, Proof of Claim*, U.S. Courts, https://www.uscourts.gov/sites/default/files/form_b_410_0.pdf. It appears that Official Form 10, which Trustee Darr cites in his brief to support this point [Dkt. No. 16 at 17], was superseded by Official Form 410 in December 2015.  *See Proof of Claim (Superseded), Form Number B 10*, U.S. Courts, https://www.uscourts.gov/forms/bankruptcy-forms/proof-claim. Because the claims deadline in this case was March 2017, I refer to the current Form 410 for purposes of this discussion.

claimant to prove his or her claims by a preponderance of the evidence. *In re Plourde*, 418 B.R. at 504 (citing *Tracey* v. *United States (In re Tracey)*, 394 B.R. 635, 639 (1st Cir. BAP 2008)).

> 1.   Participants Establish *Prima Facie* Validity of their Claims

Here, most of the payments at issue were made in cash through unwritten arrangements; no receipts or clear documentation of the transactions appear to have been provided. [Dkt. No. 15 at 8; Dkt. No. 15-1 at 46.]  Without any receipt or record of payment, these claims cannot be said to be "based on a writing."  *See In re Greater Se. Cmty. Hosp. Corp. I*, No. 02-02250, 2008 WL 2265709, at *2 (Bankr. D.D.C. May 14, 2008)("If no writing was required to create the liability, the claim is not based on a writing"); *see also In re Los Angeles Int'l Airport Hotel Assocs.*, 106 F.3d 1479, 1480 (9th Cir. 1997). These claims also do not involve an individual debtor, a perfected security interest, or an open-end or revolving consumer credit agreement.  Consequently, neither Rule 3001(c) nor Form 410 which is derived from Rule 3001(c), *see supra* note 7, mandates that any specific documentation be filed in support the type of claim the Appellant-Participants press here.

Turning to focus on whether there was compliance with the "appropriate Official Form," as required by Rule 3001(a), I find Form 410 does not set forth any specific supporting

documentation required of cash payments for which no receipts
were provided.  *See In Re Shaffner*, 320 B.R. 870, 873–74 (Bankr.
W.D. Mich. 2005).  In any case, the official form was not used
for the claims here.  Judge Hoffman ordered participants to
submit only electronic proofs of claim through the online
Portal.  *In Re TelexFree, LLC*, No. 14-40987-MSH (ECF No. 688)
(Bankr. D. Mass. Jan. 26, 2016).  The Trustee observes that
although "Official Form 10 [sic] was replaced by the Portal in
TelexFree, the Portal similarly provided Participants with the
*opportunity* to append documentation in support of their claims
filed."  The record before me does not clarify exactly what
documentation the Portal *required* of participants filing a
claim, especially for a claim based on third-party cash
payments.  Also unclear are participants' documentation
obligations when they were provided no records of their
transactions.  *See In Re Shaffner*, 320 B.R. at 874 ("it would be
patently unfair to disallow [a] claim because [the claimant] did
not include an affirmative statement that no documents existed
to evidence her obligation when the official form itself is
unclear as to whether such an affirmative statement is
required.").

Because it is not clear that specific documentation was
mandated by the bankruptcy rules, official form, or the Portal,
I will assume, without finally deciding, that the Appellant-

Participants' submissions established claims that were *prima facie* valid. I now consider whether the Trustee rebutted the presumption of the claims' validity with "substantial evidence." *Kittery*, 623 B.R. at 836.

**B.   *Substantial Evidence Rebutting Appellants' Prima Facie Case***

The Trustee offers the three affidavits of Mr. Martin, accompanied by TelexFree user account data aggregated according to the method discussed in Part I.A.3. In them, Mr. Martin presents discrepancies between each participant's net loss claim and the user account data linked to the participant by the aggregation algorithm. He offers user account logs for each Appellant-Participant showing either that the participant 1) does not possess user accounts at all or 2) is in fact a net winner, not a net loser as he or she asserts. The Trustee contends those affidavits, coupled with a lack of supporting documentation filed by the Appellant-Participants, present substantial evidence of the invalidity of the Appellant-Participants' claims. I disagree.

TelexFree structured its business practices to ensure that there would be little evidence of participant transactions. TelexFree does not appear to have issued receipts for triangular transactions between participants. The parties and amounts involved in cash transactions, in particular, may have gone undocumented. Under these circumstances, I do not find the lack

of documentation of the participants' transactions to be substantial evidence undermining their claims.

I am also not persuaded that the discrepancies Mr. Martin raises between Telexfree user account data and the Appellant-Participants' claims constitute substantial evidence.  The Appellant-Participants challenge the methods by which TelexFree recorded its user account activity.  The Appellant-Participants have not been afforded the opportunity to explore the reliability of TelexFree's record-keeping methods in an evidentiary hearing.  It is not obvious from the record before me that TelexFree maintained accurate records of all participant transactions, particularly triangular transactions.

Even if the TelexFree database did contain full and accurate transaction history for each of the Appellant-Participants' user accounts, Mr. Martin's algorithm may not have aggregated all of those accounts and linked them to the correct Appellant-Participant.  As discussed in Part I.A.3, Judge Hoffman persuasively rejected the reliability of Mr. Martin's aggregation method.  Mr. Martin failed to provide reasoned explanations for 1) why his method centered on self-reported name field data, 2) how the poor-quality data in the TelexFree database impacted the aggregation process, and 3) how the data excluded from the aggregation process altered his net equity calculations.

That Appellant-Participants were permitted to correct inaccuracies in their aggregated user account data through the electronic proof of claim Portal does not assuage my concerns. Relying on what I note to be somewhat circular logic, Mr. Martin rejected the Appellant-Participants' claims that differed from his aggregation results when Appellant-Participants could not prove the aggregation results were incorrect with traditional documentation.[8]  Yet the same features of the Appellant-Participants' transactions that resulted in their lack of documentation (e.g., they made cash payments, to third-party participants, across multiple user accounts) may have also caused them to be excluded from Mr. Martin's aggregation process.  An unknown subset of user accounts and reports were excluded from Mr. Martin's aggregation without sound justification,[9] which may have included records of Appellant-

---

[8] Appellant-Participant Joseph Nasr, for example, claimed that he invested approximately $16,000 in cash with recruiting Participant Zaid Thweib in October of 2013, using funds withdrawn from a specific bank account.  He then claimed to have invested another $29,040 with another participant who gave the funds to Thweib in January of 2014.  Mr. Nasr submitted a modification to his transaction history through the electronic proof of claim portal to reflect these sums.  Mr. Martin recommended Mr. Nasr's claim be disallowed, however, because he failed to provide documentation to support his modification and Mr. Martin's aggregated user account data showed him to be a net winner.

[9] Mr. Martin excluded over 200,000 accounts because the name field data contained fewer than three characters but did not explain why he decided to exclude accounts on this basis.  An unknown number of accounts with misspelled names or missing

Participants' transactions.  Mr. Martin provides no estimate as to how the exclusion of that data would impact net equity calculations.  *In re TelexFree, LLC*, 2021 WL 2562646, at *15.

It is the Trustee's burden to produce substantial, reliable evidence refuting the Appellant-Participants' claims.  The Trustee cannot meet this burden by pointing to the Appellant-Participants' failure to produce documentation that may or may not exist to dispute a net-equity calculation which may or may not be based on accurate data.  I do not find the Trustee's evidence substantial enough to overcome the *prima facie* validity of the Appellant-Participants' claims when that evidence has not been fully evaluated in an evidentiary hearing.  I turn to the question of appellate remedy.

### III. REMEDY

An evidentiary hearing in the bankruptcy court appears to be the best way to address the factual disputes still at issue in this case.  A hearing may not clarify the viability of all the Appellant-Participants' claims, particularly those of participants who cannot provide essential details such as the dates, amounts, and individuals involved in their transactions. The haphazard submissions filed by some Appellant-Participants and the potential futility of the exercise may have convinced

---

information fields also may have been excluded.  *In re TelexFree, LLC*, 2021 WL 2562646, at *15.

Judge Hoffman, before he conducted — shortly before his retirement — his thorough evaluation of Mr. Martin's qualifications as an expert, to forego an evidentiary hearing in the first place.  Under the circumstances, however, these Appellant-Participants — as unpromising as it might seem — must be given the opportunity to challenge the recordkeeping practices of the company that defrauded over a million participants.  They must have the chance to test the reliability of the Trustee's aggregation process, particularly given the concerns recently expressed by Judge Hoffman.  In the context of an evidentiary hearing, the bankruptcy court will also have the opportunity to clarify the claim documentation requirements, if any, for cash-based transactions, while determining the individual claims of the Appellant-Participants who pressed this appeal from Judge Hoffman's Orders regarding them.

## IV.  CONCLUSION

For the reasons set forth above, this matter is remanded to the bankruptcy court for *de novo* evaluation, including an evidentiary hearing regarding the question whether to allow the subject claims of the Appellant-Participants.


*/s/ Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE